## KIRKSEY, *et als.* v. BATES.

1. The return of the sheriff to a judicial attachment, against three defendants, that by virtue of the writ, he had levied on certain slaves, and that the same were replevied by the bond of the *defendant*, is conclusive to show that the slaves were the property of all the defendants.

2. A replevin bond returned by the sheriff, is no part of the record, and cannot be looked to to explain or contradict the sheriff's return.

3. A promissory note may be re-issued by an endorsee after it is due, and after it was discounted in bank, and paid by him at its maturity with his own funds.

4. A principal is a competent witness, (his interest having been released) to prove the object and purpose of sending an agent from Mobile to the country; it was merely proof of the character of the agency, which it was equally competent for the agent or himself to prove.

5. An account, or receipt, is open to explanation, by parol proof, and constitutes an exception to the general rule.

Error to the Circuit Court of Marengo county.

THIS was an action of assumpsit, brought in the court below, by the defendant and one Patton, his partner, (since deceased) as assignees of a promissory note, executed by the plaintiffs in error. The original writ having been returned "not found," on motion of the plaintiffs below a judicial attachment issued, which was executed by the sheriff, and on which he made the following return: "By virtue of this writ, I have levied upon and taken, four negroes, viz: Cam, Jack, Kit, and Sol, and the same replevied by a bond given by the defendant and James Goodwyn."

To a declaration in the usual form, against all the defendants below, the general issue was pleaded by John Kirksey alone; and the plaintiff below, took a judgment by default against the other two defendants, and obtained a writ of inquiry of damages.

The plaintiffs obtained judgment against all the defendants.

A bill of exceptions taken at the trial, discloses, that the note offered in evidence by the plaintiffs below, was payable to An-

drew Armstrong, or bearer, Cashier; and *was* payable at the Branch of the Bank of the State of Alabama, at Mobile, and endorsed by Franklin Robertson, jr.

The defendant read in evidence, the deposition of Andrew Armstrong, Cashier of the Branch Bank at Mobile, which proved, that the note as above described, was offered at the Bank for discount, by Franklin Robertson; and that upon its discount, it became the property of the Bank. That the note was protested at maturity, and subsequently paid to the Bank. He did not know, but supposed, that the note was paid by the last endorser, Robertson, who was then in good credit, but stopped payment some time afterwards. The witness did not know the form of the note; but presumed it was the form of country paper discounted at the Bank, and according to the prescribed form.

That the note was not what is termed accommodation paper, but was offered and done as business paper. That the note did not belong to him, nor had he any interest in it. That if the note was payable to him as Cashier, it was in the form prescribed by the rules of the Bank. That he never transfered or endorsed the note, by writing, or otherwise, to the plaintiff, unless the delivery of the note, by the individual who paid, was such transfer; if so, he believes he delivered it to Franklin Robertson. He further stated, that he had no knowledge of the transaction, except what he derived from the books of the Bank.

This testimony was objected to by the plaintiff's counsel.

The defendant further gave in evidence, and read to the jury, an account current, made out by Franklin Robertson, against John M. C. Kirksey, the principal in the note sued on, by which it appears, that on the 2d January, 1834, the note in question, was entered to the credit of said Kirksey, on the books of Robertson; and that on the 3d April, 1834, Robertson charged to the individual account of Kirksey the amount paid by him to the Bank, on taking up the note in question, including expense of protest, &c.

Franklin Robertson was, thereupon, introduced by the plaintiff, and having been released from all liability, on account of the transfer of the note, testified, that John M. C. Kirksey, the

principal in the note, being indebted to him, for advances on his account, and for acceptances of his drafts, he sent his clerk, one Tims up the country to Marengo, where Kirksey resided, to obtain cotton, money, or paper that he could use; and that Tims returned to him at Mobile with the note in question, which he, Robertson, received, in place of money or cotton, as business paper, and in payment, and credited it accordingly upon his account current: that he was unable to discount the note in bank, without endorsing it himself, and procuring his friends to endorse it with him: that after being thus endorsed, it was discounted in Bank, and at maturity was paid by him, and taken out of bank to protect his own credit: that he was not placed in funds by J. M. C. Kirksey, or either of the makers of the note, to pay it, and did not pay it as the agent of Kirksey, or with his money. That, after taking up the note at maturity, about the month of June, 1834, on account of liabilities they had assumed for him as his sureties, and upon passing off the note, he credited the account of J. M. C. Kirksey with the amount.

He further stated, that he was a commission merchant in Mobile, and the factor of J. M. C. Kirksey, at the time of the above transaction; but had no dealings with the other defendants, nor were they indebted to him. He further stated, that the note was in the form prescribed for country accommodation paper, but that he received the same as business paper. The witness also deposed to facts tending to prove a promise by John Kirksey, to pay this and other similar notes.

The plaintiffs also proved, by one Adams, that the account, exhibited by the defendants, was kept according to the custom of merchants. That the note in question was in the form prescribed by the bank for country accommodation paper, but that the bank, about that time, was in the habit of discounting such notes as business paper. Another witness also deposed, that the account current was in the form usual among merchants.

This being all the testimony, the defendant, John Kirksey, by his counsel, moved the court to instruct the jury, that if they believed from the evidence, that the note sued on was signed by

39

the defendant, and intended by the parties to be discounted by the Branch of the Bank of the State of Alabama at Mobile, for the benefit of Franklin Robertson, that the makers became liable upon the note only on its being discounted by the bank: and if it was paid at maturity by Robertson, the note was extinguished, and could not afterwards be negotiated, so as to enable the plaintiffs to recover upon it. And further moved the court to charge the jury, that if the note sued upon was executed by the defendant, to be discounted in bank, and that he received no consideration for it, he was not liable to the bank for the same, unless the bank had negotiated the note in the course of business; and that under such circumstances, the transfer by delivery of the note by Robertson, after it became due, and after he had paid the same to the bank, was such a change in the nature of the contract, as exonerated John Kirksey as surety.

And further moved the court to charge the jury, that if they believed from the evidence, and from an inspection of the face and form of the note, that the same was in the form prescribed by the bank for country accommodation paper, that the note was to be regarded as accommodation paper, unless the evidence satisfied them that it was given to Robertson, or his agent, as business paper, and that Robertson's testimony could not be received to shew what he said to his agent, when he sent him up the country, to obtain payment from John M. C. Kirksey; or the light in which he considered the paper, when he received it from his agent Tims, unless the makers of the note were present, and assented to his receiving it as business paper, in payment of debts due, or to become due to him; and that Robertson's endorsement of the note to procure its discount, was an independent contract between the bank and himself, and created no privity between the makers of the notes to himself; and that if they believed Robertson had, upon the maturity of the note, paid the same, and charged the amount in his account to John M. C. Kirksey, the principal in the note, he could not now, by testimony, contradict his written acknowledgment, so made; and could, under such circumstances, only look to John M. C. Kirk-

sey, for the amount so paid. All which instructions the court refused to give; and charged the jury, that, if they believed, from the evidence, that the note in question was executed by the parties as business paper, in payment of a debt due to Robertson, or to enable Robertson to raise money in Bank, to pay the debts or to meet the engagements of John M. C. Kirksey to himself, that his payment of the note at maturity, by himself, did not extinguish it, if they believed Robinson had paid the same as endorser, and out of his own funds, and to protect his own credit, and without being placed in funds, by the makers of the note, or some of them, for that purpose. That Robertson had a right to state the purpose for which he sent his agent, Tims, to see Kirksey; and the purpose for which he received the note in question, and that it was competent for him to shew, notwithstanding the entry in his account current, whether he paid the note at maturity, as the agent of Kirksey, with funds furnished by him; or whether he paid the same out of his own funds, and to protect his own credit: that if he paid the note as the agent of, and with the funds of Kirksey, the note would be extinguished by the payment, and no recovery could be had upon it; but if he paid it for the protection of his own credit, with his own funds, the note would not be extinguished.

The court further instructed the jury, that, if they believed the note was executed as accommodation paper, for the benefit of Kirksey, that then the plaintiff could not recover: and that, to charge the defendant, Kirksey, by any subsequent promise, if the jury believed one had been made, the proof must show that at the time of any such promise, he was in possession of a full knowledge of all the facts of his case.

To the instructions given, and to the refusal of the court, to charge as moved for, by the defendant below, an exception was taken.

The defendant now prosecutes this writ of error, and assigns for error—

1. The court below erred, in rendering judgment for the defendants in error.

2. The court erred in rendering judgment against the defendants, when the record shows that John M. C. Kirksey, and Washington W. Thompson, two of the defendants, were not in court, by their person, or by judicial attachment, at the time of the rendition of the verdict and judgment.

3. The court erred in rendering two judgments against the said John M. C. Kirksey and W. W. Thompson:

4. The court below erred, as stated in the bill of exceptions:

5. The court below erred, in refusing to charge the jury, as shown by the bill of exceptions:

6. The court erred in the charge given to the jury, as shown by the bill of exceptions.

Lyon & Murphy, for the plaintiffs in error—cited 1 Johns. Rep. 180: 5 ibid. 176: 11 ibid. 185: 10 ibid 587.

Erwin, contra—cited 1 Starkie's Ev. 36, 62: 1 Stewart & Porter 220: 3 Ser. & Raw. 229: Chitty, jr. on Bills 100: 3 Stewart 139:

ORMOND, J.—The judicial attachment which issued in this case, was directed to the sheriff, and commanded him to attach so much of the property of John M. C. Kirksey, John Kirksey, and W. W. Thompson, as should be of value sufficient to satisfy the debt and costs, according to the complaint; *to which* he made the following return: "By virtue of this writ, I have levied upon, and taken four negroes, viz: Cam, Jack, Kit, and Sol, and the same replevied by a bond, given by the *defendant* and James Goodwyn." It is insisted that this return, in connection with the replevin bond, shows that the writ was executed on the property of one of the defendants only, and that such an execution of the writ will not bring all the defendants into court.

We are of the opinion, that the replevin bond is no part of the record, and cannot be looked to in the investigation of this question; and it is, therefore, unnecessary to inquire whether one defendant could not execute a bond for all. Looking to the return then, as the only source of information of the acts of the sheriff, it is clear that the writ was properly executed.

The mandate of the writ was to take the property of all the defendants, and he returns, that, by virtue of that authority, he levied on five negroes. If this return is false, it cannot be questioned in this collateral way. His declaration must be accredited; and if untrue, he will be accountable to the party aggrieved. It is in this view quite unimportant, whether the property was replevied by one, or all of the defendants; or whether replevied at all or not : as it was the *execution* of the attachment which gave the court jurisdiction, and this right having attached, it will not be defeated even if the property was permitted by the sheriff, to be improperly replevied.

It is objected that Robertson could not state the object he had in sending Tims up the country, as his agent, nor the purposes for which he received the note sued on in this case.

Robertson, it appears, was a commission merchant, in Mobile, and the factor of John M. C. Kirksey; and on the trial, deposed that he sent one Tims, his clerk, up the country to procure from his customers, who were indebted to him, payment in money, cotton, or paper, which he could use; that Tims returned with the note sued on in this case, which he received from the agent, in place of money or cotton as business paper, and in payment, and credited it accordingly in the account current.

We can perceive no objection to this testimony. There could certainly be no objection to his stating the object of sending Tims up the country, for this was merely proof of the character of his agency; and this Robertson, was certainly, as competent to prove as Tims, the objection arising from his interest having been removed. The agent would certainly, be no better acquainted with the character of his agency, than the principal who gave him the power to act. From the nature of the thing it must rest equally in the knowledge of both; and either would be competent to prove it.

It was also, competent for him to state in what character he received the note—this is, strickly speaking, an act ; he says, he received it as business paper in payment, and accordingly, credited it on the account current. It is true that, if it were

important to consider whether the note thus received, was " *accommodation*" or " *business paper*," the act of Robertson could not change its character ; but we are not able to perceive from the record, that, this question could exert any influence in the cause.　Without now stopping to inquire whether, under the circumstances of this case, the plaintiff in error, would be benefitted by considering the note as " country accommodation paper," that question was, by the court, left to the jury, and they were told that, if the note was of that character, the plaintiff below could not recover—so that it appears the plaintiff in error, has had the full benefit of the question.

But there is a point of view in which there can be no doubt the evidence was properly received.　The account current rendered by Robertson to J. M. C. Kirksey, in which the note was entered as paid, was offered in evidence by the defendants below as proof of payment.　The items of an account, or a receipt for the payment of a sum of money, do not come within the rule, that written testimony cannot be contradicted, or explained by parol proof; or rather they form an exception to the general rule; when, therefore, this account was offered, as proof of payment, so as to discharge the sureties, it was competent for proof to be introduced, showing the light in which the note was considered when received, and all other facts and circumstances which would establish the truth of the case, and explain the meaning of the entry of payment in the first instance, and the subsequent charge, when the money was paid to the bank, on the maturity of the note, by Robertson.

It is unnecessary, as already incidentally stated, to enter upon the enquiry as to the difference, if any exists, between the rights of sureties, to accommodation or business paper, handed to a creditor, either in payment of a precedent debt, or for the purpose of raising money in bank to pay the debt, and whether, as is insisted in this case, the sureties are liable only in the event that the note is discounted by the bank; as the jury were expressly told by the court, in this case, "that if they believed the note was executed as accommodation. paper, for the benefit of Kirk-

Kirksey *et als.* v. Bates.

sey, that then the plaintiff could not recover." This opinion it is not necessary to revise, for if erroneous, it was an error in favor of the defendant.

It remains only to consider, whether the note was extinguished by the payment by Robertson, with his own funds, at its maturity, to the Bank. The question is thus propounded to the jury, that if the note in question was executed by the parties, as business paper, in payment of a debt due to Robertson, or to enable Robertson to raise money in bank, to pay the debts, or to meet the engagements of John M. C. Kirksey to himself, that his payment of the note at maturity, by himself, did not extinguish it, if paid with his own funds, and to protect his own credit.

The note in this case was endorsed by Robertson, and discounted at the bank; at its maturity, the makers of the note not having provided funds for its payment, Robertson was compelled to take it up with his own funds, and to protect his own credit; and afterwards endorsed it to the plaintiffs below. This was no extinguishment of the note. Until a bill or note, has been paid by the maker or acceptor, it has not discharged its functions, and may be re-issued, after it is due and after it has been paid by an endorser. See Byles on Bills of Exchange 97, and Callow v. Lawrence: 3 Mauel & Selwyn, 97. The discount of the note by the bank, is in effect, nothing more, so far as this question is concerned, than a borrowing by Robertson, of the amount due on it, by a pledge of the note with his guaranty; and as it could have been endorsed before such a transaction, it is manifest it could be afterwards. Such would be the decision on principle, and such it is on authority. The payment by Robertson, was not a payment of the note, but a return of the money advanced on his endorsement.

There was no error in the judgment of the Court, and it is therefore affirmed.